**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

B.A. CONSTRUCTION & MANAGEMENT,
INC., a Michigan corporation and B.A. REAL
ESTATE, L.L.C., a Michigan limited liability
company,

       Plaintiffs/Counter-Defendants,

-vs-

CASE NO. 04-73910

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

KNIGHT ENTERPRISES, INC., a Michigan
corporation,

       Defendant/Counter-Plaintiff,

and

KNIGHT ENTERPRISES, INC., a Michigan
corporation,

       Third Party Plaintiff,

-vs-

BELAL ABDALLAH, an individual, LOUBNA
ABDALLAH, an individual, NABIL BERRY,
an individual, and HALA BERRY, an individual,

       Third Party Defendants.

_____/

**OPINION AND ORDER DENYING THIRD PARTY DEFENDANTS BELAL
ABDALLAH, LOUBINA ABDALLAH, NABIL BERRY, AND HALA BERRY'S
MOTION FOR SUMMARY JUDGMENT AS TO THIRD PARTY PLAINTIFF KNIGHT
ENTERPRISES, INC.'S THIRD PARTY COMPLAINT**

**I.    BACKGROUND**

1

    **A.**    **Litigation Trail**

In this action, Plaintiff B.A. Construction & Management, Inc. ("BA Construction") and Plaintiff B.A. Real Estate ("BA Real Estate") (collectively "Plaintiffs") brought an eight count Complaint[1] on October 5, 2004 alleging a violation of the Petroleum Marketing Practices Act ("PMPA"), breaches of contract, promissory estoppel, and requesting injunctive relief. BA Construction is a Michigan corporation doing business in Wayne County as a gasoline dealer. (Compl. ¶ 1). BA Real Estate is a Michigan limited liability company doing business in Wayne County. (*Id*. at ¶ 2). Defendant Knight Enterprises ("Knight") is a Michigan corporation doing business in Wayne County and is a wholesale supplier of gasoline products to dealers who operate gasoline stations. (*Id*. at ¶ 3, Def.'s Resp. 3). Knight filed a counterclaim on November 1, 2004 alleging breach of contract for failure to return $22,000 worth of equipment and premises improvements and a $30,000 advance on a signing bonus. On March 21, 2005, Knight filed a Third Party Complaint against Belal Abdallah ("Abdallah"), Loubna Abdallah, Hala Berry and Nabil Berry (collectively "Third Party Defendants"). Knight's Third Party Complaint consists of two counts of breach of guaranty, and one count each of breach of contract and liquidated damages. On October 14, 2005, Third Party Defendants filed the present Motion for Summary Judgment. Knight filed a response, and Third Party Defendants replied.

---

[1]    Count I:        Violation of the Federal Petroleum Marketing Practices Act
    Count II:       Breach of Contract of the Improvement Agreement
    Count III:      Beach of Contract of the Motor Fuel Franchise Agreement
    Count IV:     Injunctive Relief
    Count V:       Injunctive Relief
    Count VI:     Injunctive Relief
    Count VII:    Injunctive Relief
    Count VIII:   Promissory Estoppel

**B.     Facts**

In January 2004, Plaintiffs and Abdallah, President of BA Construction and BA Real Estate, entered into an Improvement Agreement (the "Improvement Agreement") and a Motor Fuel Franchise Agreement (the "Franchise Agreement"). (Def.'s Resp. 3). During the negotiations of the agreement, Abdallah informed Knight that his gas station sold 125,000 gallons of gasoline per month. (*Id.*). Based on Abdallah's representations, Knight worked out an arrangement with Citgo Petroleum Corporation ("Citgo") whereby Knight would be reimbursed $130,000.00 over time from Citgo if Plaintiffs' station was branded,[2] e.g., if Plaintiffs purchased a minimum of 125,000 of gasoline per month and if the station's appearance met Citgo's specifications. In turn, Knight agreed to give Plaintiffs a $130,000.00 signing bonus. These terms were placed in the Franchise Agreement and the Improvement Agreement. Plaintiffs and Knight also signed a Line of Credit Agreement ("Credit Agreement") and a mortgage for the property on which the gas station was located.

The Franchise Agreement states, in pertinent part:

25.     No rebate on fuel will be paid during the terms of the contract. However an up front cash *signing bonus* will be paid by Knight Enterprises, Inc. to the dealer of an amount of One Hundred Thirty Thousand ($130,000) dollars issued *upon the formal acceptance* of the branded station by the major oil company.

---

[2] Branding occurs when a gas station becomes affiliated with an oil company and puts up the oil company's name at the station. There are three phases of the branding process. The first phase consists of requesting to be branded and once a positive response is received by Citgo, the station owner is allowed to place the necessary signage on the property. (Pls.' Br. Ex. 6, Knight Dep. 53-54). The second phase is when a station owner asks to be approved to supply and gets set up to accept credit cards. (Pls.' Br. Ex. 6, Knight Dep. 53-55). The final phase is the receipt of formal documentation stating that Citgo is giving a rebate on the location. (Pls.' Br. Ex. 6, Knight Dep. 55). All documents involved in the branding process are made between Knight and Citgo. (*Id.*).

(Third Party Defs.' Br. Ex. 6, Franchise Agreement ¶ 25) (emphasis added). The Improvement Agreement states:

> 2. IMPROVEMENTS: KNIGHT agrees to provide the following described equipment and improvement or cash to be used to purchase improvements (collectively the "Improvements") on the Property at an agreed upon value of [$152,000].
>
>> Detail of Improvements
>> KNIGHT will provide an ID Price Sign, Image Dispensers & Canopy and paint poles and curbs = Twenty Two Thousand Dollars ($22,000) [and a] *Signing Bonus* of One Hundred thirty Thousand Dollars ($130,000).
>> . . . .
>
> 3. Subject to the terms hereof, DEALER shall reimburse KNIGHT for the Value of the Improvements; provided, however, DEALER *shall not be obligated to reimburse* KNIGHT for the Value of the Improvements *so long as* during the Term, DEALER purchased for and delivered to the Retail Outlet the total requirement of Fifteen Million (15,000,000) gallons of KNIGHT supplied motor fuel (the "Volume").

(Pls.' Br. Ex. 4, Improvement Agreement ¶¶ 2, 4) (emphasis added). The Franchise Agreement was to cover a term of 10 years. (Pls.' Br. 2). Knight advanced Plaintiffs $30,000 of their signing bonus in reliance on the representations and contracts between the parties. (Def.'s Resp. 5). However, Knight would not agree to advance Plaintiffs the remaining $100,000 of the signing bonus until Third Party Defendants signed guaranties. (Knight Supp. Br. Ex 1, Abdallah Dep. 69: 18-25). On January 13, 2004, Abdallah allegedly signed a guaranty, and on March 2, 2004, Loubna Abdallah, Nabil Berry[3] and Hala Berry allegedly signed guaranties (collectively the "guaranties), which secured the extension of credit from Knight to Plaintiffs. (Third Party

---

[3] Nabil Berry, at one point, loaned money to Plaintiffs and proposed to become partners with Abdallah. (Knight's Resp. Ex. B, Nabil Berry Dep. 11: 19-24). Nabil Berry signed the guaranty because he thought he was a co-owner of Plaintiffs at the time, but he ended up backing out of the partnership. (*Id*. at 39: 13-25).

4

Defs.' Br. Ex. 4 -6).

Knight also extended Plaintiffs a line of credit. (Def.'s Resp. 4). The line of credit was in the amount of 2 loads of gasoline ("back loads"). Under the Credit Agreement, the first back load of gasoline was to be paid by Plaintiffs upon the delivery of the third load of gasoline. (*Id*.). Thus, Plaintiffs never had more that two unpaid loads of gasoline outstanding at any one time. (*Id*.). Knight alleges that Plaintiffs violated the Credit Agreement on February, 13, 1004, February 26, 2004 and March 9, 2004, when they wrote checks to Knight that were returned due to insufficient funds. (*Id*.). After Plaintiffs bought a load on March 13, 2004, Knight made no shipments of fuel for two months. (Pls.' Br. Ex. 6, Knight Dep. 77: 6-12). On March 24, 2004, the President of Knight, Carroll Knight, sent Plaintiffs a letter which indicated that all loads of fuel needed to be paid for with certified funds, i.e., on a cash basis, at or before the time of delivery. (*Id*. at 5; Def.'s Resp. Ex. C, Letter 03/24/04). The letter also stated that Knight was aware that Plaintiffs have used other suppliers for gasoline while selling the fuel as a Citgo product, i.e., misbranding. (*Id*.). The requirement to pay for fuel with certified funds was rejected by Plaintiffs, who requested more credit. (*Id*.). Knight refused to offer Plaintiffs additional credit. (*Id*.).

Between March 13, 2004 and May 17, 2004, Plaintiffs did not purchase gasoline from Knight. (Pls.' Br. Ex. 6, Knight Dep. 77: 6-12). During this time period, Knight alleges that Plaintiffs bought gasoline from other suppliers. Carroll Knight observed Plaintiffs unloading unauthorized gasoline into the tanks of Plaintiffs' station. (Pls.' Br. Ex. 6, Knight Dep. 81: 1-11).

On April 6, 2004, Charles Roehl, an attorney for Knight, sent Plaintiffs a letter

5

terminating the Franchise Agreement. (Def.'s Resp. Ex. D, Letter 4/06/04). According to Carroll Knight, Knight again sold motor fuel to Plaintiffs on May 17, 21 and 26, 2004. (Pls.' Br. Ex 6., Knight Dep. 80: 3-4). After May 26, 2004, Plaintiffs stopped ordering fuel and allegedly continued to buy fuel from other suppliers. (*Id*. at 5). It is unclear when Plaintiffs removed or covered over the Citgo name and symbol after they stopped ordering fuel from Defendant. On September 2, Knight foreclosed on the property that is the subject of this lawsuit. Plaintiffs then filed their Complaint.

Third Party Defendants Abdallah and Berry argue that Knight has not offered evidence to show that they are liable for all or part of Plaintiffs' claims against Knight. Third Party Defendants assert that the Guaranties signed by them have nothing to do with: (1) the mortgage between Plaintiffs and Knight; (2) Knight's violation of the PMPV; (3) Knight's breach of the Franchise or Improvement Agreement. In the alternative, Third Party Defendants argue that even if Knight brought a valid Complaint against Third Party Defendants, they are still entitled to summary judgment because Knight has never extended credit to Third Party Defendants in their individual or joint capacities. Third Party Defendants further contend that they did not sign personal guaranties securing any debt of Plaintiffs, and the guaranties that were given by Loubna Abdallah, Hala Berry and Nabil Berry are not supported by consideration as they were signed two months after Plaintiffs and Knight signed the Franchise Agreement and Credit Agreement. Finally, Third Party Defendants argue that since Plaintiffs are not liable to Knight, they too are not liable to Knight.

Knight argues that Third Party Defendants are trying to take advantage of clerical errors on the part of Knight. Knight argues that Third Party Defendants knew that they were signing

guaranties and that the guaranties were signed to guarantee the debts of Plaintiffs. Knight argues that a contract should be construed to reflect the parties' intention at the time they enter into the contract. Further, Knight argues that reading the guaranties with the other contracts shows that it was the intention of the parties to have Third Party Defendants guarantee Plaintiffs' debts.

## II. ANALYSIS

### a. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a

verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the non-moving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that the non-moving party introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**b.  Discussion**

In this case, there are five alleged guaranties. Knight claims that the guaranties were to guarantee the Plaintiffs debt and that Third Party Defendants are trying to take advantage of Defendant's clerical errors. The issue is that in each one of the guaranties the names of Third Party Defendants are inserted as debtors, instead of guarantors.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of parties.

To this rule all others are subordinate." *McIntosh v. Groomes*, 227 Mich. 215, 218 (1924). "A court . . . has no power to alter or reform an agreement made between parties, since this would be in truth the power to contract for them." *Deseret Nat'l Bank v. Dinwoodey*, 53 P. 215, 216 (Utah 1898). A court may correct a mistake in a writing which was executed as evidence of the agreement, so that the agreement expresses what the parties actually agreed to. *Id.* at 216-17. Therefore, the mistake must be the "mistake of both parties . . . such as a mistake in the drafting of the writing as makes it convey the intent or meaning of neither of the parties to the contract." *Id.* at 217. Section 155 of the Restatement (Second) of Contracts states:

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may . . . reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

One guaranty lists Hala Berry as the Debtor and is signed by Loubna Abdallah. (Third Party Defs.' Br. Ex. 3). Third Party Defendants argue that Loubna Abdallah signed this guaranty in her individual capacity to secure the extension of credit from Knight to Debtor Hala Berry. Knight argues that there was a clerical error and that the guaranty was intended to lists Plaintiffs as Debtors. Knight contends that the purpose of the document was to have Loubna Abdallah guarantee the debts of BA Construction and BA Real Estate. Third Party Defendants respond that the guaranty is clear and unambiguous and must be enforced as written.

The Court finds that there was a mistake in the expression of the document that occurred at the time the document was drafted. Loubna Abdallah stated in her deposition that she remembers signing the guaranty and that she "probably thought that [she and Abdallah] were both guaranteeing [the debts of a corporation]." (Knight Resp. Ex. A, L. Abdallah Dep. 13-15).

9

Abdallah testified in his deposition that he spoke to Loubna Abdallah about the guaranty and informed her that Knight wanted a personal guaranty from him and Loubna before Knight would advance Plaintiffs the remaining amount of the signing bonus. (Knight Supp. Br., Abdallah Dep. 69: 9-22). Hence, both Loubna Abdallah and Knight intended Loubna Abdallah to guarantee the debts of Plaintiffs. Although the parties reached this agreement and attempted to reduce it to writing, the parties failed to correctly express the agreement. "The mistake is one as to expression -- one that relates to the contents or effect of the writing that is intended to express their agreement -- and the appropriate remedy is reformation of that writing properly to reflect their agreement." RESTATEMENT (SECOND) OF CONTRACTS § 155, Comment a. Therefore, the Court finds that Loubna Abdallah did sign a personal guaranty securing the debt of Plaintiffs. Accordingly, the Court denies Third Party Defendants' Motion for Summary Judgment as to Loubna Abdallah's guaranty.

Another guaranty allegedly secures the extension of credit from Knight to Nabil Berry in his individual capacity. The guaranty is signed by Nabil Berry. Third Party Defendants and Knight make the same arguments as with the previous guaranty. When asked in his deposition whether he knew at the time he signed the guaranty that he was guaranteeing the debts of the corporation, Nabil Berry responded, "Of course." (Knight Resp. Ex. B, N. Berry Dep. 30: 4-7). Abdallah also testified in his deposition that he talked to Nabil Berry and informed him that Knight needed a personal guaranty from him. (Knight Supp. Br., Abdallah Dep. 69: 23-24, 70: 2-24). Additionally, Nabil Berry mentioned in his deposition his awareness that under the guaranty, if "[he and Belah did not] honor that contract with [Knight], that [they would] be responsible for [any of the corporation's debts]. (*Id*. at 31: 5-7). Further, Nabil Berry testified

that Mr. Knight and Abdallah explained to him that he needed to guarantee the debts of the company. (*Id*. at 33: 3-5). Although the parties reached this agreement and attempted to reduce it to writing, they failed to correctly express the agreement. Further, the guaranty as written does not make sense because it states that Nabil Berry is guaranteeing the extension of credit to himself. Because the remedy for this mistake is reformation, the Court finds that Nabil Berry signed a personal guaranty securing the debt of Plaintiff. Accordingly, the Court denies Third Party Defendants' Motion for Summary Judgment as to Nabil Berry's guaranty.

Hala Berry also signed a guaranty. Her guaranty stated that she was securing Knight's extension of credit to Nabil Berry. Third Party Defendants argue that no credit has been extended to Nabil Berry and, therefore, no liability arose on the part of Hala Berry personally. Knight contends that the purpose of the document was to have Hala Berry personally guaranty the debts of BA Construction and BA Real Estate, not Nabil Berry. Third Party Defendants respond that the guaranty is clear and unambiguous, and that it must be enforced as written.

No testimony has been presented which indicates that Hala Berry knew that she was personally guaranteeing the debts of Plaintiffs. Abdallah did testify that he explained the reason for the guaranty to Hala Berry's husband, but relied on Nabil Berry to speak to his wife. (Knight Supp. Br., Abdallah Dep. 71: 12-13). Nabil Berry testified that he presented the guaranty to his wife to sign with the understanding that she needed to sign it, but he did not remember what he told her. (Knight's Resp. Ex. B, Nabil Berry Dep. 31, 32). Further creating confusion is the fact that Hala Berry signed an identical guaranty to the one signed by Nabil Berry.[4] Unlike the above

---

[4] Hala Berry's guaranty is an exact copy of Nabil Berry's guaranty, e.g., Nabil Berry's name is even printed under the signature line. The only difference between the two guaranties is that Nabil Berry signed one and Hala Berry signed the other.

mentioned guaranties, Hala Berry's name is not written anywhere on this guaranty. Since it is unclear whether Hala Berry knew she was signing a guaranty, there is a genuine issue of material fact as to whether Hala Berry knew she was signing a guaranty. Accordingly, the Court denies Third Party Defendants' Motion for Summary Judgment as to Hala Berry's guaranty.

The final two guaranties at issue are guaranties that list Belal Abdallah individually, and Belal Abdallah and Nabil Berry collectively, as Debtors. (Third Party Defs.' Br. Ex. 1, 2). Belal Abdallah signed each guaranty three times: once for each Plaintiff and once individually. Nabil did not sign either of these guaranties. Abdallah testified that under the guaranty, he knew that if Plaintiffs breached the contract, he would be personally liable. (Knight Supp. Br., Abdallah Dep. 71: 19-24). Abdallah further testified that he knew he was guaranteeing Plaintiffs' fuel purchases and any other debts that Plaintiffs incurred. (Knight Supp. Br., Abdallah Dep. 72: 1-6). Therefore, the Court finds that Abdallah signed a personal guaranty securing the debt of Plaintiffs. Accordingly, the Court denies Third Party Defendants' Motion for Summary Judgment as to both of Belal Abdallah's guaranties.

Third Party Defendants also argue that Knight offered no evidence to support a finding that they are liable to Knight for all or part of Plaintiffs' claims against Knight. Third Party Defendants claim that the guaranties individually secure the debts of Knight. Third Party Defendants contend that the guaranties have nothing to do with the mortgage, the Franchise Agreement or the Improvement Agreement, and, therefore, Knight's Complaint should fail on its face. Knight argues that the guaranties were for the debts of Plaintiffs and not for the debts of persons who lacked contractual relations with it.

The Court finds that Belal Abdallah, Loubna Abdallah, and Nabil Berry's guaranties

12

were to secure the debt of Plaintiffs. Because these guaranties secured Plaintiffs' debts, the Court finds that there is a genuine issue of material fact as to whether Belal Abdallah, Loubna Abdallah, Nabil Berry are liable to Knight for all or part of Knight's successful claims against BA Construction and BA Real Estate.[5]

### III. CONCLUSION

For the reasons stated above, the Court DENIES Third Party Defendants' Motion for Summary Judgment as to Loubna Abdallah, Nabil Berry, Belal Abdallah, and Hala Berry.

**SO ORDERED.**


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: April 19, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 19, 2006.

S/Jonie Parker
Case Manager

---

[5] However, since the Court previously found Plaintiffs BA Construction and BA Real Estate not liable to Knight, (*see* Opinion and Order, April 11, 2006, Docket No. 69), Knight has no claims against Third Party Defendants by way of their guaranties.