UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


B.A. CONSTRUCTION and MANAGEMENT,
INC., and B.A. REAL ESTATE, L.L.C.,

        Plaintiffs,                      CIVIL ACTION NO. 04-73910

        v.                                DISTRICT JUDGE PAUL D. BORMAN

KNIGHT ENTERPRISES, INC.,       MAGISTRATE JUDGE VIRGINIA MORGAN

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This matter is before the court on the motion of B.A. Construction & Management (BACM) and B.A. Real Estate LLC (BARE) for exemplary damages and for attorney fees. Plaintiffs seek the relief pursuant to 15 U.S.C. § 2805(d). Plaintiffs submit that they incurred $70,399.56[1] in fees and that they should be reimbursed for the full amount. They also contend that they are entitled to an unspecified amount of exemplary damages under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 *et seq*. Defendant filed a response. Oral argument was held before the magistrate judge on July 30, 2007. For the reasons set forth in this Report, it is recommended that the motion be denied.

---

      [1]At oral argument, counsel stated that the amount of $99,482.61 in the pleadings was a typographical error.

- 1 -

*A. Background*

Plaintiff BACM is a gasoline dealer which operates retail gasoline stations. Dr. Belal Abdallah is the sole shareholder of BACM and the sole member of BA Real Estate LLC. He is also the personal guarantor of the contracts at issue and entered into the underlying mortgage agreement for the property at the retail outlet location. Defendant Knight is a wholesale supplier of CITGO gasoline products to gasoline dealers who operate retail stations.

In January, 2004, BACM and BA Real Estate entered into various contracts as part of a Franchise Agreement with Knight. BACM desired to make the gas station part of the CITGO brand. During contract negotiations, Dr. Abdallah allegedly represented that the station in Allen Park, Michigan (the retail outlet) historically had sold 125,000 gallons of gasoline per month. Based on such representation, the contracts provided a substantial signing bonus to plaintiffs to be used for improvements to the station. The parties agreed on credit terms for the gasoline purchases and BARE gave a mortgage on the property to Knight. Knight was to obtain approval of BACM as a CITGO supplier, supply BACM with CITGO branded fuel at the retail outlet and pay plaintiffs $130,000 as the "signing bonus." BACM was to use the money for improvements to the retail outlet, the purchase of inventory, and establishing a Blimpies Franchise at the retail outlet. Knight advanced $30,000 of the bonus amount during the CITGO approval process, performed imaging improvements to the retail outlet, and extended credit on two loads of gasoline. However, defendant argued that plaintiffs violated the terms of the credit agreement (not to have more than two unpaid loads of gasoline) by tendering a non-sufficient funds check for the third load, as well as not paying for two or three subsequent loads and were in violation

of their Line of Credit Agreement.  In addition, sales at the retail outlet were substantially below Dr. Abdallah's representations (40,000 to 50,000 gallons per month instead of 125,000).  When Knight requested cash payments for the fuel, plaintiffs began ordering from non-CITGO suppliers.  Knight refused to tender the balance of the signing bonus and stopped supplying plaintiffs with fuel in March, 2004.  Plaintiffs' counsel sent Knight a letter dated March 26, 2004, indicating that they would no longer be purchasing fuel from defendant.  (Ex. 1 to Knight's Response)  Attorney Charles Roehl, Knight's corporate attorney, sent plaintiffs a letter dated April 6, 2004, advising them that they were not formally approved as a CITGO dealer, that they had not ordered sufficient gasoline, that they had not paid timely, and that they were ordering from other suppliers while operating under the CITGO brand.  For these reasons, the Franchise Agreement was being terminated.  Subsequently, in the summer of 2004, Knight commenced foreclosure proceedings under the terms of the mortgage.  The foreclosure sale took place on September 2, 2004, with plaintiffs having until March 2, 2005 to redeem.  Plaintiffs did not attempt to redeem.  Instead, plaintiffs filed this lawsuit October 1, 2004.  Plaintiffs moved for a preliminary injunction October 5, 2004, seeking to set aside the foreclosure, or alternatively to stay the redemption period.

In count I of the complaint, plaintiffs alleged a violation of the Petroleum Marketing Practices Act "PMPA" (15 U.S.C. §2802/2804)–Unlawful Termination/Cancellation/Non-Renewal, claiming that Knight failed to provide notice as required under the statute.  Defendant denied the allegations and responded that it advanced $30,000 but did not advance the remainder because plaintiff Dr. Abdallah misrepresented to defendant the amount of gasoline that his

station sold per month and violated the credit terms. In Counts IV, V, VI, and VII, plaintiffs sought equitable relief from the foreclosure sale. Plaintiffs are not seeking damages for Counts II or III which alleged breach of contract and promissory estoppel.

In March, 2005, Hon. Paul D. Borman entered an order on the Motion for Preliminary Injunction which granted the motion in part, only to the extent of staying the six-month redemption period pending disposition of the instant action. The basis for the injunctive relief was state law, not the PMPA. (Order #25)

In April, 2006, the district judge entered orders on dispositive motions (#69, #70). The court granted plaintiffs' motion for partial summary judgment for liability as to counts IV through VII and set aside the foreclosure sale. Plaintiffs did not argue that the foreclosure violated the PMPA. Instead, plaintiffs claimed that the foreclosure proceedings violated Michigan common and statutory law. The court found that a reasonable jury could find that the Mortgage was security for the Line of Credit agreement, defendant was not entitled to foreclose because plaintiffs did not breach the Franchise Agreement as plaintiffs were not required to repay the back loads they received on credit until of final completion of the Franchise Agreement.

In March, 2007, the issue of damages was tried before a jury. The jury found in favor of plaintiffs but awarded no damages. (#112) Defendant has appealed to the Sixth Circuit the court's grant of partial summary judgment. Two and a half months after judgment was entered, plaintiffs filed this motion for attorney fees and exemplary damages under the PMPA.

*B. Analysis*

The Petroleum Marketing Practices Act is remedial legislation enacted to protect franchisees' reasonable expectation of continuing the franchise relationship. Unocal Corp v. Kaabipour, 177 F.3d 755, 762 (9th Cir. 1999). Section 2805(d)(1)(C) of the PMPA contains a fee-shifting provision which provides for a discretionary award of to a franchisee of attorney fees and costs if the franchise shows a violation of § 2802 and § 2803. The law with respect to "prevailing party" (a term not defined under the PMPA) is taken from the meaning of that term in fee shifting provisions of other statutes. Yousuf v. Motiva Enterprises, LLC, 2006 WL 4020576 (E.D. LA 2006). Section 2805(d)(1)(B) of the Act provides for exemplary damages to the franchisee only for the franchisor's "willful disregard" of § 2802 or § 2803 of the PMPA. The term "willful disregard" in the context of the PMPA means that a franchisor "either knew its conduct was prohibited by the PMPA or if the franchisor acted with plain indifference to its prohibitions." Eden v. Amoco Oil Co., 741 F.Supp. 1192, 1195 (D. MD 1990). Courts which have considered the term "willful disregard" under the PMPA have been reticent to award exemplary damages absent a clear and affirmative showing of a deliberate and intentional act on the part of the defendant. Mustang Marketing Inc. v. Chevron Products Co, 406 F.3d 600 (9th Cir. 2005).

*1. The Motion is Untimely*

As noted by defendant, a party must make a motion for attorney fees "no later than 14 days after entry of judgment." Federal Rule of Civil Procedure 54(d)(2)(B); Barna v. City of Cleveland, 172 F.3d 47, 1998 WL 939884 (6th Cir. Ohio)(unpublished). A late filing is

permitted only if the movant requests an enlargement of time within the fourteen day period or demonstrates excusable neglect. Fed.R.Civ.P. Rule 6(b)(2); Allen v. Murph, 194 F.3d 722, 723-24 (6th Cir. 1999). Neither of those conditions are met here and the motion was filed more than two months after judgment was entered. Thus, the motion for fees should be denied as untimely.

In addition, the request for exemplary damages is also late. Plaintiffs seek to amend the judgment to include an award of $100,000 in exemplary damages. Motions to Alter or Amend a Judgment must be filed no later than ten days after the entry of the judgment. Fed.R.Civ.P. Rule 59(e). A court may not grant any extension to this rule and is without jurisdiction to entertain the motion. Fed.R.Civ.P. Rule 6(b). The motion for exemplary damages is untimely and should be summarily denied.

*2. There is No Entitlement to Attorney Fees Under the PMPA.*

An award of attorneys fees under the PMPA is discretionary with the court. Yousuf v. Motiva Enterprises, LLC, 2006 WL 4020576, *4 (E.D. LA 2006). The key to determining whether a party is entitled to attorneys fees on the grounds they have prevailed is whether there has been a judicially sanction changed in the parties legal relationship. Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept of HHS, 532 U.S. 598, 604-605 (2001). Where the district court enters an agreed temporary restraining order which maintains the status quo pending a determination on the merits, plaintiff franchisee is not a "prevailing party" for purposes of the PMPA. Kothari v. Motiva Enterprises LLC, 2006 LEXIS 55800 (S.D. TX, July 27, 2006). Even though the plaintiff's ultimate goal may be accomplished through the defendant's voluntary change in conduct, an agreed upon TRO lacks the required *judicial*

*imprimatur* on the changes. Id., citing. Buckhannon, 532 U.S. at 605. Further, as plaintiffs here progressed in the lawsuit, they were unable to show any damages at all, let alone any damages under the PMPA.

Plaintiffs obtained only a partial summary judgment on the issue of liability with respect to the foreclosure sale. The relief obtained was based on Michigan common and statutory law, not on the PMPA. The trial did not determine that plaintiffs are prevailing parties under the PMPA. The motion for attorney fees should be denied.[2]

*3. There is No Entitlement to Exemplary Damages Under the PMPA*

Plaintiffs seek $100,000 in exemplary damages under the PMPA for defendant's "willful disregard" of the requirements of 2802 and/or 2803. Title 15 U.S.C. §2802(b)(1) states that a franchisor may terminate any franchise if the notification requirements are met. Pursuant to § 2804, a franchisor must provide the franchisee with at least 90 days notice, unless it would be unreasonable for the franchisor to wait that long to terminate the franchise. In this case, defendant's counsel sent a letter to plaintiffs on April 6, 2004 which immediately terminated the franchise relationship and stated that plaintiffs had not been formally accepted as a franchisee. However, it appears that on March 16, 2004, CITGO sent plaintiffs a letter that says that branding had been completed. The franchise agreement provided that "upon the formal

---

[2]Because the court finds that plaintiffs are not entitled to fees at all, the issue of whether the fees are reasonable is not discussed. Suffice it to say that if plaintiffs were to be entitled to fees, it would be substantially less than requested. While a rate of $175/hour seems reasonable under the Hensley v. Eckhardt lodestar calculation, see Miller v. Alldata Corp., 14 Fed.Appx. 457, 468 (6th Cir. 2001), the hours claimed–369 hours–do not seem reasonable, particularly where little, if any, seemed directed to the claims under the PMPA as opposed to the state law foreclosure claims.

- 7 -

acceptance of the branded station," the signing bonus should be paid.  Plaintiffs argue that the letter constituted formal acceptance; defendant argued that Knight had been advised by the letter writer–Mr. Franczkowski–that the formal approval date was August 4, 2004.  (Knight Dep 69: 4-23)  The district court, in the April 11, 2006 opinion, found that the letter met the formal acceptance of the Franchise Agreement and triggered defendant's obligations under the PMPA.  Defendant argues that, if so, immediate termination was necessary because plaintiffs were buying less fuel than they had represented they would buy and were buying from other sources and misbranding their fuel.  Plaintiffs contend that defendant's actions entitle them to exemplary damages.  This court disagrees.  While Judge Borman found that defendant Knight should have provided ninety-days notice to plaintiffs and defendant failed to do so, he carefully considered several other cases which had similar facts but which held in favor of defendant's actions here.  In <u>Marathon Petroleum Co. v. Pendleton</u>, 889 F.2d 1509 (6th Cir. 1989), the franchisee purchased gas and other station products but was delinquent on his rent.  The Sixth Circuit held that short notice (ten days) for termination was reasonable because the franchisee was losing interest in running the station, maintained inadequate gasoline supplies and was chronically late in making payments.  In <u>Equilon Enterprises LLC v. Rahim, Inc.</u>, 2003 WL 22598325 (6th Cir. 2003), the franchisor terminated the agreement immediately.  The Circuit Court upheld as a matter of law the immediate termination, noting that no reasonable juror could conclude that defendant was in error.  The franchisor suffered loss and was likely to suffer additional loss if it was required to supply fuel to the gas station for 90 days.  In <u>Wisser Co. Inc. v. Mobil Oil Corp</u>., 730 F.2d 54, 60 (2nd Cir. 1984), the court upheld an immediate termination of a franchise

because there was no reason to believe that the gas station would not have used the 90 days to continue its alleged misbranding to its profit.  Although the court ultimately found these cases distinguishable, there is no legal or factual support for a finding that defendant willfully disregarded the PMPA.  The attorney who wrote the letter to plaintiffs was not aware of any formal approval in place, plaintiffs had purchased fuel from other sources and were selling it as CITGO gas, plaintiffs had misrepresented the amount of fuel that they would be purchasing, and had failed to pay timely for several loads of fuel.  Thus, there is no basis for exemplary damages.

In addition, even on the foreclosure aspect of the case, the jury found that plaintiffs had suffered no actual damages.  It is difficult to conclude that defendant should pay exemplary damages to a plaintiff who had no actual loss.

Therefore, it is recommended that the plaintiffs' motion for attorney fees and exemplary damages be denied as untimely and lacking merit.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan  
Virginia M. Morgan  
United States Magistrate Judge

Dated: October 2, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on October 2, 2007.

s/Jane Johnson  
Case Manager to  
Magistrate Judge Virginia M. Morgan